Bruce FOXWORTHY, Plaintiff–Appellant,

v.

HILAND DAIRY COMPANY, Defendant–Appellee.

No. 92–6139.

United States Court of Appeals, Tenth Circuit.

May 3, 1993.

Donald W. Jones and Rebecca A. McCoy of Hulston, Jones, Gammon & Marsh, Springfield, MO, and Thomas D. Robertson and Angelyn L. Dale of Nichols, Wolfe, Stamper, Nally & Fallis, Inc., Tulsa, OK, for defendant-appellee.

Before MOORE and BRORBY, Circuit Judges, and VAN BEBBER,** District Judge.

VAN BEBBER, District Judge.

Plaintiff-appellant Bruce Foxworthy appeals the district court judgment in favor of his former employer, Hiland Dairy Company (Hiland), finding Foxworthy exempt from the overtime provisions of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 207, based on application of the Motor Carrier Act exemption, 29 U.S.C. § 213(b)(1). Because Foxworthy was engaged in interstate commerce, as defined in the Motor Carrier Act, we affirm.[1]

Foxworthy worked as a route driver for Hiland from November 1990 to March 1991, delivering dairy products to Hiland's regular customers in the Ponca City area of Oklahoma. Although he regularly worked more than forty hours per week, Foxworthy was not paid overtime compensation.

Hiland's milk and cheese products are processed in Fort Smith, Arkansas. Twice a week, Foxworthy would order milk and cheese products for his customers from the Fort Smith plant. Each of his customers had an authorized "buildup," or level of Hiland products which the customer had previously agreed to stock at its facility. Foxworthy would estimate the amount to be ordered based upon each customer's historic sales. The products would be loaded on a refrigerated truck in Arkansas, marked specifically for the Ponca City route, and transported to a distribution center in Oklahoma City. There, the dairy products would simply be

Guy Clark of Northcutt, Clark, Gardner, Hron & Powell, Ponca City, OK, for plaintiff-appellant.

** Honorable G. Thomas Van Bebber, District Judge, United States District Court for the District of Kansas, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that

oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

refrigerated overnight in the truck. The products would then be transported to a refrigerated trailer in Ponca City, Oklahoma, from which Foxworthy would load his delivery truck.

A significant portion of Foxworthy's route included delivery to Circle K convenience stores. Hiland provided dairy products for these stores with a privately labeled "Circle K" brand. These particular products were intended to be delivered to Circle K stores in Oklahoma from the moment they were loaded onto the truck in Fort Smith, Arkansas.

Another component of Foxworthy's job included collecting empty plastic crates from his customers for transportation back to the Fort Smith processing plant. Foxworthy would pick up approximately 130 to 150 empty crates per day. These plastic crates were indispensable to the processing procedures at the Arkansas plant.

Foxworthy brought suit against Hiland for overtime compensation pursuant to the FLSA. Hiland removed the case to the United States District Court for the Western District of Oklahoma. After trial, the district court granted Hiland's motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 52(c), finding that the Motor Carrier Act exemption applied to exempt Foxworthy from receiving overtime compensation. This appeal followed.

■ In determining whether an employee falls within an exemption to the FLSA, the district court must first make findings as to certain factors, and then apply a legal standard. *Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739 (1986). " '[The] district court's findings as to the underlying factors must be accepted unless clearly erroneous, while review of the ultimate question of [applicability of the exemption] is *de novo.*'" *Dole v. Snell,* 875 F.2d 802, 805 (10th Cir.1989) (quoting *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1059 (2d Cir.1988)); *see also Icicle Seafoods,* 475 U.S. at 712–14, 106 S.Ct. at 1529–30.

■ Pursuant to 29 U.S.C. § 207(a), an employer must pay overtime compensation, at one and one-half times the regular wage, whenever an employee works more than forty hours per week. These requirements do not apply, however, to those employees for whom the Secretary of Transportation has power to establish qualifications and maximum hours. 29 U.S.C. § 213(b)(1).[2] An employee of a private motor carrier is subject to the power of the Secretary of Transportation, and therefore exempt from the FLSA, if the employee in the performance of his duties moves goods in interstate commerce and affects the safe operation of motor vehicles on public highways. 49 U.S.C. §§ 3102, 10521; *see United States v. American Trucking Ass'ns,* 310 U.S. 534, 553, 60 S.Ct. 1059, 1068, 84 L.Ed. 1345 (1940) (construing former delegation of authority to Interstate Commerce Commission).

■ The question becomes whether Foxworthy, whose deliveries were performed solely within the State of Oklahoma, was engaged in interstate commerce. Transportation within a single state may remain "interstate" in character when it forms a part of a "practical continuity of movement" across state lines from the point of origin to the point of destination. *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 568, 63 S.Ct. 332, 335, 87 L.Ed. 460 (1943). The characterization of such transportation as interstate or intrastate depends upon the "essential character" of the shipment. *Texas N.O.R.R. v. Sabine Tram Co.,* 227 U.S. 111, 122, 33 S.Ct. 229, 233, 57 L.Ed. 442 (1913).

■ " 'Crucial to a determination of the essential character of a shipment is the shipper's fixed and persisting intent at the time of shipment.' " *International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers v. Interstate Commerce Comm'n,* 921 F.2d 904, 908 (9th Cir.1990) (quoting *Armstrong World Indus., Inc., Transportation Within Texas,* 2 I.C.C.2d 63, 69 (1986), *aff'd sub nom. Texas v. United States,* 866 F.2d 1546, 1556 (5th Cir.1989)). To make this determination, the Interstate Commerce Commission formulated a three-prong test in *Ex Parte*

---

**2.** This authority, previously vested in the Interstate Commerce Commission, was transferred to the Department of Transportation in 1983. *See* P.L. 97–449, 96 Stat. 2413, 2438 (1983).

*No. MC–48, Determination of Jurisdiction Over Transportation of Petroleum and Petroleum Products by Motor Carriers Within a Single State,* 71 M.C.C. 17, 29 (1957). This test, set out in 29 C.F.R. § 782.7(b)(2), concludes that there is no fixed and persisting intent to ship goods in interstate commerce where:

(i) At the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination beyond the terminal storage, and (ii) the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated, and (iii) transportation in the furtherance of this distribution within the single State is specifically arranged only after sale or allocation from storage.

■ Applying this test, the district court found that Hiland had a "fixed and persisting transportation intent beyond the terminal storage point at the time of shipment, knowing exactly to which customers its product is going to go and knowing, on the basis of history, who is going to buy what." District Ct. Ruling, p. 7. This conclusion is well supported by the record.

Hiland's shipments were made pursuant to preexisting orders by specific customers who had agreed to stock a specific amount of a particular product. Because the customers had already agreed to purchase such amounts, the orders were for a "specific quantity," similar to a requirements or supply contract. *See, e.g., Middlewest Motor Freight Bureau v. Interstate Commerce Comm'n,* 867 F.2d 458, 460 (8th Cir.) (when most shipments involved supply contracts or other arrangements entered into prior to shipment, chemical company intended for its products to continue on in interstate commerce), *cert. denied,* 493 U.S. 890, 110 S.Ct. 234, 107 L.Ed.2d 185 (1989); *Baird v. Wagoner Transp. Co.,* 425 F.2d 407, 412 (6th Cir.) (when shipper had not entered into requirements contracts or specific quantity arrangements before shipping to terminal, no fixed and persisting transportation intent existed), *cert. denied,* 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59 (1970); *Galbreath v. Gulf Oil*

*Corp.,* 413 F.2d 941, 945–46 (5th Cir.1969) (when ninety-seven percent of oil was shipped pursuant to contract, either for specific gallonage or to meet customers' requirements, oil passed through the terminal storage in a "practical continuity of movement"); *Shew v. Southland Corp. (Cabell's Dairy Div.),* 370 F.2d 376, 380 (5th Cir.1966) (when dairy products originated out of state and were distributed within a day, pursuant to preexisting orders, delivery was part of a continuous movement in interstate commerce).

The second and third prongs of the test also indicate that Foxworthy's deliveries were interstate in nature. The products were not "sold or allocated" from the Ponca City trailer, with transportation being arranged subsequently. That is, "the products were not held in storage or inventory pending the receipt of actual orders." *Baird,* 425 F.2d at 412. Instead, any "sale or allocation" of the products, if not made in Fort Smith, took place only *after* the goods had been transported to Hiland's customers.

■ Other factors identified as relevant to this determination include: the length of time movement of the product is interrupted by storage; whether the distribution center has a low "through-put" compared to its storage capability; whether the products are shipped on a "predetermined" ordering cycle; whether the carrier is in continuous possession of the product until delivery; whether the product is processed or commingled in any way at the storage location; whether the final destination is designated by the out-of-state shipper or by an instate intermediator; whether the goods were intended for particular customers; and whether temporary storage simply provides an efficient opportunity to convert the means of delivery from one form of transportation to another. *See, e.g., Middlewest Motor Freight Bureau,* 867 F.2d at 460–61; *Texas v. United States,* 866 F.2d at 1556–57; *Baird,* 425 F.2d at 412; *Galbreath,* 413 F.2d at 947.

Here, the products were segregated from the moment they left Arkansas, destined for Foxworthy's Ponca City customers, and were not commingled. They were stored for an extremely short period of time, never exceed-

ing three days, and then were moved according to a predetermined schedule on a fairly regular basis. At least one of the purposes for maintaining the distribution trailer was to change the method of transporting the products to a smaller vehicle. Hiland maintained control over the dairy products throughout the entire journey and determined their final destination. The products were not processed in any way and were not held in storage or inventory pending the receipt of actual orders. For these reasons, the dairy products did not come to rest at the Ponca City trailer and their delivery was simply a continuation of their interstate movement from Fort Smith, Arkansas, to Ponca City, Oklahoma.

■ In any event, we hold that Foxworthy's transportation of the empty milk crates is sufficient, in itself, to support his exemption from the overtime provisions of the FLSA. The crates were picked up on a daily basis, formed a significant portion of Foxworthy's duties, and were shipped immediately from Oklahoma to the processing plant in Arkansas. We held in *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1025 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992), that the regular pickup of empty containers, destined for out-of-state facilities, both placed employees in interstate commerce and exempted them from the overtime provisions of the FLSA. Because the route drivers' duties had a "substantial effect" on motor vehicle safety, they were subject to the power of the Secretary of Transportation, and thus were not covered by the FLSA. *Thomas* controls the facts in this case.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.