2012 COA 73

**Maria BERUMEN and Dawn Adams,
Complainants–Appellees and
Cross–Appellants,**

v.

**DEPARTMENT OF HUMAN SERVICES,
WHEAT RIDGE REGIONAL CENTER,
Respondent–Appellant and Cross–Appellee,**

and

**State Personnel Board, Appellee.**

No. 11CA0640.

Colorado Court of Appeals,
Div. III.

April 26, 2012.

Mark Schwane, Denver, Colorado, for Complainants–Appellees and Cross–Appellants.

John W. Suthers, Attorney General, Vincent E. Morscher, First Assistant Attorney General, Denver, Colorado, for Respondent–Appellant and Cross–Appellee.

John W. Suthers, Attorney General, Catherine Shea, Assistant Solicitor General, Judy L. Labuda, Assistant Attorney General, Denver, Colorado, for Appellee.

Opinion by Judge GABRIEL.

¶ 1 The Department of Human Services, Wheat Ridge Regional Center (WRRC) appeals the State Personnel Board's (the Board's) award of back pay and benefits to complainants, Maria Berumen and Dawn Adams, employees whom WRRC discharged. Complainants cross-appeal the Board's determinations upholding their terminations and denying their request for attorney fees.

¶ 2 Regarding the appeal, we conclude that the Board's determination that a public employer must provide a certified public employee with advance notice of all of the rights that he or she has at a pre-disciplinary meeting was contrary to the plain language of the applicable Board rule and was not required by due process. We further conclude that complainants' due process rights were not violated. Accordingly, we hold that the Board erred in concluding that complainants received inadequate notice of their pre-disciplinary meetings and thus reverse its award of back pay and benefits.

¶ 3 Regarding the cross-appeal, we conclude that the record amply supported the administrative law judge's (ALJ's) findings that (1) complainants received an adequate opportunity to be heard prior to their terminations, (2) certain hearsay evidence was admissible against them, and (3) they were not entitled to an award of attorney fees. Accordingly, we hold that the Board correctly affirmed those findings.

## I. Background

¶ 4 WRRC operated a house for developmentally disabled residents, including Client 1. Berumen was a certified Health Care Technician I, and Adams was a certified Client Care Aide II for those residents.

¶ 5 The evidence produced before the ALJ demonstrated that on December 6, 2009, complainants placed Client 1 in an unauthorized hold, causing him to suffer a rug abrasion on his face, and then failed to report this incident, in violation of applicable WRRC procedures. Another staff member, however, reported the incident after seeing Client 1's injuries and learning what had happened from Client 2, a resident who had witnessed the episode. Complainants were then placed on paid administrative leave, pending an investigation.

¶ 6 Over the next few days, an investigator for WRRC and several police officers interviewed Client 1 and Client 2, who provided similar descriptions of the incident (although Client 1 refused to cooperate during one interview). The investigator and officers also interviewed complainants, who denied that they had employed any type of hold on Client 1. Sometime later, however, Berumen changed her story, telling WRRC's investigator that Adams had, in fact, used a hold on Client 1. Berumen also provided a handwritten statement describing the incident in detail, including the physical contact between and among her, Adams, and Client 1.

¶ 7 Subsequently, WRRC's investigator completed and forwarded her report to WRRC's management committee and to complainants' appointing authority. The appointing authority decided to notice both complainants for pre-disciplinary meetings, pursuant to Colorado State Personnel Board Rule 6–10, 4 Code Colo. Regs. 801 (Rule 6–10), and he and his supervisor drafted such notices for complainants.

¶ 8 For reasons not clear from the record, neither Berumen nor Adams received these notices. In late December 2009, however, the appointing authority called both complainants and informed them of the date, time, and place scheduled for their pre-disciplinary meetings. The appointing authority did not advise complainants in these calls of their right to have a representative at the meetings.

¶ 9 On January 5, 2010, the appointing authority, together with his supervisor, met first with Berumen and then with Adams. At the beginning of each meeting, the appointing authority or his supervisor read to complainants the first paragraph of Rule 6–10, which included their right to have a representative present. Complainants then both confirmed that they knew why they were meeting. In addition, Berumen did not request a representative, and although Adams said she did not know anything about "the representation," she said, "I don't have a lot to hide, so it doesn't really matter." Each complainant then participated in the meetings and described the event at issue.

¶ 10 Complainants' descriptions of the incident differed from one another, and differed from versions that they had previously provided. Berumen now said that although Adams was on the floor with Client 1, she did not place him in a hold, which would have caused his behavior to escalate, but simply tried to make sure that he did not hurt himself. Adams maintained that she had not put Client 1 in a hold, but she now said that she may have sat down beside and played a game with him as a means of redirecting him.

¶ 11 Within days of these meetings, the appointing authority sent letters to complainants advising them of the decision to terminate their employment, based on substantiated physical abuse of a resident, willful violation of agency policies and procedures, and, in Adams' case, failure to adhere to past corrective action. Thereafter, pursuant to section 24–50–125(3), C.R.S.2011, complainants petitioned for a hearing on their terminations, and a hearing was subsequently conducted before the ALJ.

¶ 12 At the hearing, WRRC presented testimony from numerous witnesses, including the staff member who had reported the hold, WRRC's investigator, the appointing authority, and his supervisor, all of whom supported WRRC's position that the incident involving the hold had occurred and that complainants had failed to comply with applicable proce-

dures. Among other things, one staff member testified that on December 6, 2009, Adams had told him that she and Berumen had to put Client 1 in a hold earlier that day. WRRC did not call Client 1 or Client 2, however, because, according to its evidence, their developmental disabilities and their resulting inability to handle the evidentiary hearing environment rendered them unavailable to testify. Over complainants' hearsay objections, WRRC presented the clients' out-of-court statements through the testimony of other witnesses.

¶ 13 Complainants both responded that they did not place Client 1 in any type of hold. (Berumen explained her above-described written statement to the contrary by testifying that WRRC's investigator had told her what to write and that she did so because she feared losing her job if she did not comply.) In addition, complainants argued that (1) WRRC had failed to comply with Rule 6–10's notice requirements, and (2) the appointing authority's supervisor, not the appointing authority himself, made the decision to discharge complainants, which was improper.

¶ 14 After the hearing, the ALJ issued a lengthy, detailed, and thorough order denying all of complainants' requests for relief. The ALJ expressly found that, because, among other things, complainants' descriptions of the events at issue had changed several times, complainants were not credible. The ALJ also concluded that complainants had received adequate notice of their pre-disciplinary meetings, and she rejected their contention that the decision to terminate them was made by the appointing authority's supervisor, and not by the appointing authority, as required.

¶ 15 Complainants then appealed the ALJ's ruling to the Board. The Board ultimately adopted all of the ALJ's findings of fact and conclusions of law, except for her conclusion that WRRC gave complainants adequate notice of the pre-disciplinary meeting. On that issue, the Board held:

> [WRRC's] verbal notice of the pre-disciplinary meeting under Board Rule 6–10 which did not include complete notification of the Complainants' rights with regards to

that meeting, including but not limited to the right to have a representative present at the meeting, was arbitrary, capricious and contrary to the rule.

The Board thus awarded complainants back pay and benefits from their respective dates of termination up to the first day of the hearing. The Board denied their remaining requests for relief.

¶ 16 The parties now appeal.

## II. Standard of Review

 ¶ 17 When an appellate court reviews the decision of an administrative agency like the Board,

> [it] may reverse [the] administrative agency if it finds that the agency acted arbitrarily or capriciously, made a decision that is unsupported by the record, erroneously interpreted the law, or exceeded its authority. Where the challenge is to the Board's resolution of an ultimate conclusion of fact, a reviewing court must determine whether the record contains sufficient evidence showing a reasonable basis in law for the Board's conclusion. If the reviewing court finds that sufficient evidence supports the Board's conclusion, then the Board's action is not an abuse of discretion, and the court may not reverse it. In reviewing the Board's decision, courts should give deference to the Board because it is a constitutionally created state agency with considerable expertise in personnel matters, and courts should resolve all reasonable doubts as to the correctness of the Board's decision in the Board's favor.

*Colorado Dep't of Human Services v. Maggard,* 248 P.3d 708, 712–13 (Colo.2011) (citations omitted).

### III. Notice of the Pre–Disciplinary Meeting

¶ 18 WRRC contends that the Board abused its discretion in holding that complainants did not receive adequate notice of their pre-disciplinary meetings and in awarding back pay and benefits to them for this alleged violation. Specifically, WRRC asserts that the Board abused its discretion in

concluding that the notices that were given were inadequate under Rule 6–10 because they failed to provide "complete notification of [complainants'] rights with regard to [the] meeting, including but not limited to the right to have a representative present at the meeting." We agree that the Board abused its discretion here.

¶ 19 In construing an administrative regulation, we apply the same rules of construction that we would in interpreting a statute. *Phillips v. Executive Dir.*, 251 P.3d 1176, 1178 (Colo.App.2010). We first look to the language of the regulation and analyze the words and phrases according to their plain and ordinary meaning. *Id.* We give effect to every word and term whenever possible. *Cendant Corp. v. Dep't of Revenue*, 226 P.3d 1102, 1106 (Colo.App.2009). We also read and consider the regulatory scheme as a whole to give consistent, harmonious, and sensible effect to all of its parts. *Id.* And as with statutes, if the language of a regulation is clear and unambiguous, we do not resort to other rules of construction. *Phillips*, 251 P.3d at 1178.

¶ 20 Rule 6–10 provides:

When considering discipline, the appointing authority must meet with the certified employee to present information about the reason for potential discipline, disclose the source of that information unless prohibited by law, and give the employee an opportunity to respond. The purpose of the meeting is to exchange information before making a final decision. The appointing authority and employee are each allowed one representative of their choice. Statements during the meeting are not privileged.

A. When reasonable attempts to hold the meeting fail, the appointing authority must send a written notice, to the last known address of the employee, advising the employee of the possibility of discipline and stating the alleged reasons. The employee has 10 days from receipt of the notice to respond in writing. If the employee refuses to accept the notice, a dated return receipt from a mail carrier is conclusive proof of the attempt to deliver and the period to respond begins on that date.

¶ 21 The language of this rule is clear and unambiguous. When, as here, reasonable attempts to hold the meeting have not failed, Rule 6–10 only requires that the appointing authority provide notice *at the meeting* of "the reason for potential discipline" and "the source of that information," unless disclosure of the source of the information is prohibited by law.

¶ 22 Such a reading gives sensible effect to all parts of the rule and also is consistent with the regulatory scheme as a whole, in which the pre-disciplinary meeting is merely an initial opportunity to exchange information. Specifically, as our supreme court made clear in *Department of Institutions v. Kinchen*, 886 P.2d 700, 705 (Colo.1994), the pre-disciplinary meeting is not a formal hearing, but rather is an opportunity for the parties to exchange information while discipline is being considered. Once the appointing authority notifies an employee of the decision to impose discipline, the employee is accorded full rights to a hearing and judicial review. *See id.* at 705–06; *accord Maggard*, 248 P.3d at 712.

¶ 23 For these reasons, we conclude that the Board abused its discretion in concluding, contrary to the clear and unambiguous language of Rule 6–10, that that Rule required advance notice of all of complainants' rights with regard to their pre-disciplinary meetings.

¶ 24 Notwithstanding the foregoing, the Board asserts that (1) we must defer to its interpretation of its own rules, and (2) even if advance notice were not required by Rule 6–10, such notice was required by due process. We are not persuaded.

¶ 25 With respect to the Board's assertion that we must defer to its interpretation of Rule 6–10, "[t]he Board's interpretation of its own rules is generally entitled to great weight unless it is plainly erroneous or inconsistent with [a Board] rule or the underlying statute." *Bishop v. Dep't of Insts.*, 831 P.2d 506, 508 (Colo.App.1992); *see also Christensen v. Harris County*, 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000)

("[D]eference [to an agency's interpretation of its own regulation] is warranted only when the language of the regulation is ambiguous.... To defer to the agency's position [on an unambiguous regulation] would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation."); *Sierra Club v. Billingsley*, 166 P.3d 309, 312 (Colo.App.2007) (noting that we give "great deference" to an agency's interpretation of a rule it is charged with enforcing if the language of that rule is ambiguous or unclear); *Tebbetts v. Whitson*, 956 P.2d 639, 641 (Colo.App.1997) (no deference is given when an agency's interpretation is inconsistent with its own rules).

¶ 26 Here, as noted above, the Board's interpretation is inconsistent with the unambiguous language of the rule, and we may not read into the rule a requirement that does not exist, particularly when, as here, the drafters of the rule knew how to require advance notice when they intended to include such a requirement. *See Shelter Mut. Ins. Co. v. Mid–Century Ins. Co.*, 246 P.3d 651, 662 (Colo.2011) (refusing to read a primary insurer requirement into a statute when other provisions that designated primary insurers showed that the General Assembly knew how to identify an owner's insurer as primary when it wished to do so); *People in Interest of S.G.L.*, 214 P.3d 580, 586 (Colo. App.2009) (refusing to read a no-fault provision into a statute when the General Assembly had expressly provided for no-fault adjudications in certain circumstances and thus knew how to do so when it so intended).

■■■ ¶ 27 With respect to the Board's argument that procedural due process required detailed advance notice of the pre-disciplinary meeting, we disagree. Certified state employees are entitled to procedural due process prior to termination of employment. *Kinchen*, 886 P.2d at 707 n. 13. When, as here, however, an employee is entitled to a full administrative hearing and judicial review after the decision to terminate has been made, any pre-termination meeting need only provide "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee

are true and support the proposed action." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545–46, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

■■■ ¶ 28 Thus, with respect to pre-disciplinary meetings, procedural due process entitles an employee only to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. 1487. In light of the flexibility inherent in the *Loudermill* Court's approach to pre-disciplinary meetings, the required notice need not be given far in advance of the meeting; indeed, in an appropriate case, contemporary notice could potentially satisfy due process. *See Staples v. City of Milwaukee*, 142 F.3d 383, 386–87 (7th Cir.1998). Moreover, "an employee has no constitutional right to counsel at a pre-termination hearing." *Panozzo v. Rhoads*, 905 F.2d 135, 140 (7th Cir.1990).

¶ 29 Applying these principles here, we conclude that Rule 6–10 facially satisfies the above-described requirements of procedural due process. The rule provides for notice of the charges, an explanation of the reason for the potential discipline, disclosure of the source of that information, and an opportunity for the employee to respond. Accordingly, we reject the Board's assertion that we must read into Rule 6–10 an advance "complete notification" requirement in order to satisfy the requirements of due process.

■■■ ¶ 30 Moreover, the record here reveals that the notices that were given to complainants pursuant to Rule 6–10 comported with the requirements of due process. Both complainants concede that they received advance oral notice of the meetings, and they both stated at the beginning of their respective pre-disciplinary meetings that they knew the purpose of the meetings. Both were told the reasons for their possible discipline, and both were given an opportunity to respond. And both were given a full administrative hearing and rights of judicial review here. Although neither was told until the pre-disciplinary meetings of a right to a representative, neither objected to proceeding without a representative or sought a

delay to retain a representative. To the contrary, Adams said, "I don't have a lot to hide, so it doesn't really matter."

¶ 31 For these reasons, we conclude that the Board abused its discretion in holding that complainants received inadequate notice of their pre-disciplinary meetings and that they were therefore entitled to back pay and benefits. Accordingly, we reverse that portion of the Board's order.

¶ 32 In light of this disposition, we need not address WRRC's alternative argument that the Board engaged in improper legislative rulemaking here.

### IV. Opportunity to be Heard Prior to Discharge

■■■ ¶ 33 Turning to complainants' cross-appeal, complainants first contend that they were denied an opportunity to be heard at their pre-disciplinary meetings because the decision to discharge them was made not by the appointing authority after the pre-disciplinary meetings, but by his supervisor and by WRRC's investigator before the meetings took place. In support of this argument, complainants note that, prior to the meetings, WRRC's investigator told a police officer that complainants would be terminated and the investigator also discussed complainants' terminations with the appointing authority's supervisor. We are not persuaded.

¶ 34 As noted above, the ALJ rejected complainants' argument that the appointing authority did not make the decision to terminate them, finding that "[t] he evidence does not support this contention." The ALJ further rejected complainants' contention that the appointing authority's supervisor had assumed the role of appointing authority. The ALJ found, instead, that the supervisor had played a "critical and appropriate role in mentoring [the appointing authority] through the entire disciplinary process."

¶ 35 These findings were amply supported by the record, most notably by the appointing authority's testimony that he made the decision to discharge complainants. Accordingly, we may not disturb the ALJ's findings, *see Maggard,* 248 P.3d at 712, and, thus, we cannot conclude that complainants were de-

nied a fair opportunity to be heard prior to their terminations.

### V. Admission of Hearsay Evidence

¶ 36 Complainants next contend that the ALJ erred when, over their objection, she allowed WRRC to admit hearsay evidence of statements made by Client 1 and Client 2. Again, we are not persuaded.

■■■ ¶ 37 Administrative hearings need not comply with the strict rules of evidence. *Partridge v. State,* 895 P.2d 1183, 1187 (Colo. App.1995). The standard to be applied is whether the evidence possesses probative value commonly accepted by reasonable and prudent persons in the conduct of their affairs. *Id.; accord* § 24–4–105(7), C.R.S.2011.

■■■ ¶ 38 In determining whether hearsay evidence is reliable, trustworthy, and probative for purposes of an administrative hearing, factors include, but are not limited to, the following:

(1) whether the [hearsay] statement was written and signed; (2) whether the statement was sworn to by the declarant; (3) whether the declarant was a disinterested witness or had a potential bias; (4) whether the hearsay statement is denied or contradicted by other evidence; (5) whether the declarant is credible; (6) whether there is corroboration for the hearsay statement; (7) whether the case turns on the credibility of witnesses; (8) whether the party relying on the hearsay offers an adequate explanation for the failure to call the declarant to testify; and, finally, (9) whether the party against whom the hearsay is used had access to the statements prior to the hearing or the opportunity to subpoena the declarant.

*Indus. Claims Appeals Office v. Flower Stop Mktg. Corp.,* 782 P.2d 13, 18 (Colo.1989) (citations omitted).

■■■ ¶ 39 Here, many of the enumerated factors favored admitting the hearsay statements of Client 1 and Client 2. For example:

● there was no evidence that Client 1 and Client 2 were interested or biased;

● although Client 1's and Client 2's statements were contradicted by some, but

not all, of complainants' statements, complainants' descriptions of the events at issue had changed over time and, in some cases, were self-contradictory, as the ALJ observed in finding that complainants were not credible;

- WRRC witnesses testified that they had no reason to believe that Client 1 and Client 2 were untruthful in their reports, noting that neither had a history of making false reports regarding staff conduct, and the ALJ made findings to this effect. Indeed, Adams herself said in her pre-disciplinary meeting that she had not known Client 1 to "make up" allegations like the ones involved in this case, or to say things that were not true;

- Client 1's and Client 2's statements were corroborated by additional evidence, including the evidence of Client 1's injuries and the evidence of complainants' own admissions;

- WRRC offered an adequate explanation for its decision not to call Client 1 and Client 2 to testify. Specifically, WRRC presented testimony that, if subjected to questioning in a courtroom, Client 1 "would refuse to talk, and if a person continued asking him questions, he would start to slap his leg and rock on this chair, possibly trying to break it backwards." He would also start "[t]hrowing these things around, the books, the water jug." Likewise, if Client 2 were subjected to courtroom questioning, he might become physically aggressive toward others and himself, he would be "self-injurious," and his "anxiety would go up"; and

- complainants had access to the hearsay statements prior to the hearing before the ALJ.

¶ 40 Under these circumstances, we perceive no abuse of discretion in the ALJ's decision to admit the hearsay statements of Client 1 and Client 2.

## VI. Attorney Fees

¶ 41 Finally, complainants contend that because WRRC provided them with neither sufficient notice prior to their pre-disciplinary meetings nor a sufficient opportunity to be heard prior to discharge, WRRC discharged them in bad faith, and thus the ALJ and the Board erred in denying their request for attorney fees pursuant to section 24–50–125.5, C.R.S.2011. Because we have rejected complainants' claims, we reject their request for attorney fees.

## VII. Conclusion

¶ 42 For these reasons, the Board's order is reversed as to the determination that complainants received inadequate notice of their pre-disciplinary meetings and the award of back pay and benefits to complainants. In all other respects, the Board's order is affirmed.

Judge ROY and Judge TERRY concur.