The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 5, 2020

## 2020COA153

**No. 17CA2384, *Gomez v. JP Trucking, Inc.* — Labor and Industry — Wages — Colorado Minimum Wage Order — Fair Labor Standards Act — Exemptions**

A division of the court of appeals interprets the "interstate drivers" exemption to the Colorado Wage Order's overtime requirements harmoniously with the federal Fair Labor Standards Act Motor Carrier Act (MCA) exemption. The division declines to follow the holding in *Brunson v. Colorado Cab Co.*, 2018 COA 17, ¶ 45 (*cert. granted* June 18, 2018) (*cert. dismissed* Jan. 29, 2019), which concluded that the interstate drivers exemption applied "only to drivers whose work takes them across state lines." The trial court correctly found that the employee truck drivers were subject to the MCA exemption, and then correctly applied the *Brunson* holding pursuant to another division of this court's remand order.

But, because the division believes *Brunson* was wrongly decided, it reverses the trial court's judgment under the Wage Order and remands the case with directions to vacate the damages award.

COLORADO COURT OF APPEALS **2020COA153**

Court of Appeals No. 17CA2384
Eagle County District Court No. 16CV30222
Honorable Russell H. Granger, Judge

Leonel Gomez, Francisco Gonzalez, Ebarardo Sanchez, and Nathan Abbott,

Plaintiffs-Appellees,

v.

JP Trucking, Inc.,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE FREYRE
Dunn and Brown, JJ., concur

Announced November 5, 2020

Riley Law LLC, Kelli Riley, Greeley, Colorado, for Plaintiffs-Appellees

Hall and Evans, LLC, Meredith L. McDonald, Paul Yarbrough, Denver,
Colorado, for Defendant-Appellant

¶ 1    In this employment wage dispute, we are asked to address the interplay between provisions of the Fair Labor Standards Act (FLSA) and the Colorado Minimum Wage Order.  *See* Colo. Minimum Wage Order No. 31, 7 Code Colo. Regs. 1103-1 (effective Dec. 30, 2014- Dec. 31, 2015), https://perma.cc/4DFR-69JU (hereinafter Wage Order).[1]  The FLSA sets federal minimum wage and overtime requirements for certain employees nationwide, while the Wage Order sets the minimum wage and overtime pay requirements for Colorado employees who work in certain industries.  As relevant here, both the FLSA and the Wage Order exempt drivers who transport goods in interstate commerce from these requirements. The FLSA's Motor Carrier Act (MCA) exemption excludes an employee who "in the performance of his duties moves goods in interstate commerce and affects the safe operation of motor vehicles on public highways."  *Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1154 (10th Cir. 2016) (quoting *Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670, 672 (10th Cir. 1993)).  Similarly, the Wage Order

_____

[1] Colorado Minimum Wage Order No. 31 was in effect at the time of the events in this case.  Since then, the Colorado Department of Labor and Employment has promulgated subsequent wage orders. *See infra* note 5.

exempts "interstate drivers" from overtime requirements, *see* Wage Order § 5 but does not define the term "interstate drivers." Thus, the question before us is whether an "interstate driver" under the Wage Order carries the same meaning as an employee covered under the MCA exemption.

¶ 2     Another division of this court considered this question in *Brunson v. Colorado Cab Co.*, 2018 COA 17 (*cert. granted* June 18, 2018) (*cert. dismissed* Jan. 29, 2019). It held that the Wage Order's "interstate driver" exemption applies "only to drivers whose work takes them across state lines," and in doing so, accorded a narrower meaning (and exemption) to "interstate drivers" than accorded under the MCA exemption. *Id.* at ¶ 45.

¶ 3     In this case, defendant, JP Trucking, Inc., appeals the trial court's judgment in favor of plaintiffs, former employees Leonel Gomez, Francisco Gonzalez, Ebarardo Sanchez, and Nathan Abbott (collectively Employees), following a limited remand ordered by a division of this court for additional factual findings. JP Trucking asks us to reject the *Brunson* division's holding and urges us to read "interstate drivers" under the Wage Order harmoniously with the MCA exemption. JP Trucking also challenges the damages

awarded. For the reasons explained below, we agree with JP Trucking on the first issue and respectfully decline to follow *Brunson. See Chavez v. Chavez*, 2020 COA 70, ¶ 13 (the holding of one division of the court of appeals does not bind another division). Finding *Deherrera*'s reasoning persuasive, we adopt it and, therefore, reverse the judgment in favor of Employees under the Wage Order and remand the case with directions to enter judgment in favor of JP Trucking. Because we reverse the judgment, we need not address JP Trucking's remaining contentions.

## I. Factual and Procedural Background

¶ 4 JP Trucking hired Employees as truck drivers. In their complaint, Employees alleged that JP Trucking failed to pay them time and a half as required by the FLSA, 29 U.S.C. §§ 201-219 (2018), and the Wage Order. JP Trucking answered that because Employees were interstate drivers, they were exempt from overtime under the MCA exemption and the Wage Order.

¶ 5 Following a bench trial, the trial court found for Employees under the FLSA and Wage Order and awarded them damages. JP Trucking appealed. Another division of this court concluded that it could not resolve the appeal without further factual findings. The

division ordered a limited remand, instructing the trial court to make additional findings of fact to redetermine whether Employees were exempt from the FLSA, and to decide whether, in light of *Brunson*, they were exempt under the Wage Order. *Gomez v. JP Trucking*, (Colo. App. No. 17CA2384, June 18, 2019) (unpublished order).

¶ 6 On remand, a different judge entered additional factual findings.[2] As relevant here, the trial court found:

- JP Trucking regularly transported items and materials across state lines and within Colorado when the materials were destined for or coming from other states.

- During Employees' employment, JP Trucking "was involved in interstate commerce and subject to regulation by the U.S. Department of Transportation."

- JP Trucking "intended to and did comply with U.S. Department of Transportation regulations, including regulations relating to drivers' qualifications and limits on drivers' hours," during the period at issue.

---

[2] The original trial judge retired before the division ordered the limited remand.

- Interstate trips were "indiscriminately and randomly distributed among its drivers."

- Employees "could have been called upon to travel out-of-state for JP Trucking, or to deliver within the state goods that were in interstate commerce."

- JP Trucking provided Employees with the Federal Motor Carrier Safety Regulations, and Employees agreed to familiarize themselves with them.

- JP Trucking's employment application placed Employees "on notice that they would be subject to investigation, testing and restriction pursuant to the U.S. Department of Transportation regulations."

- JP Trucking's employment application required Employees to provide prior employment information for JP Trucking's investigation of their safety performance histories pursuant to the U.S. Department of Transportation's regulations.

- On the part of the application asking "Intrastate Only," each employee checked the "No" box.

- None of the Employees indicated they were not applying to drive in interstate commerce.

¶ 7    From these additional findings, the trial court concluded that (1) JP Trucking regularly transported goods across state lines and within Colorado when those goods were destined for or came from other states; (2) Employees were randomly assigned trips involving goods in interstate commerce; (3) JP Trucking maintained a company policy regarding and performed the activity of interstate driving by obtaining an interstate permit in 2008 and thereafter consistently complying with U.S. Department of Transportation regulations; and (4) JP Trucking adhered to federal regulations by notifying Employees, through its employment application, of federal policies and regulations, including those addressing investigation, testing, and hours limitations.  The trial court then found that JP Trucking had met its burden of proving that Employees were exempt from overtime under the MCA exemption.

¶ 8    Turning to *Brunson*, the trial court found that Gomez and Sanchez were not "interstate drivers" under the Wage Order because neither had driven out-of-state.  And because Gonzalez and Abbott had driven out-of-state only once, their out-of-state driving

was de minimis and, therefore, did not qualify them as "interstate drivers." The court then awarded Employees damages under the Wage Order and reasonable fees and costs under section 8-4-110(1), C.R.S. 2019. On appeal, neither party disputes the trial court's FLSA judgment. Instead, they dispute whether an interstate driver under the Wage Order is different from a driver who moves goods in interstate commerce under the MCA exemption.

## II.     Interstate Driver

¶ 9     JP Trucking contends that the trial court should not have relied on *Brunson* because the *Brunson* division got it wrong when it interpreted "interstate drivers" in the Wage Order more narrowly than federal courts that have interpreted the Wage Order consistently with the MCA exemption. It asserts that because many of the Wage Order's provisions are patterned after the FLSA, federal constructions of the Wage Order should be accorded great weight. Alternatively, JP Trucking argues that if out-of-state travel is necessary for an employee to be an interstate driver, then the trial court erred by applying the de minimis rule and by finding Gonzalez and Abbott non-exempt because the undisputed record shows that both drove across state lines.

A.     Standard of Review and Applicable Law

¶ 10     We review administrative regulations de novo, and our primary task is to give effect to the enacting body's intent.  *Colo. Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 22 (Colo. App. 2010).  When construing administrative regulations, we apply the same rules we use to interpret statutes.  *Berumen v. Dep't of Human Servs.*, 2012 COA 73, ¶ 19.  As with statutes, we first look to the regulation's language and analyze "the words and phrases according to their plain and ordinary meaning," giving effect "to every word and term whenever possible."  *Id.*  "We also read and consider the regulatory scheme as a whole to give consistent, harmonious, and sensible effect to all of its parts."  *Id.*  If the language is clear and unambiguous, we do not resort to other rules of construction.  *Id.*  Language "is ambiguous when it is reasonably susceptible of multiple interpretations."  *Colo. Oil & Gas Conservation Comm'n v. Martinez*, 2019 CO 3, ¶ 19.

1.     MCA Exemption

¶ 11     The FLSA requires employers to pay overtime compensation to employees who work more than forty hours a week.  29 U.S.C. § 207(a) (2018).  But it exempts numerous employees, including

"any employee with respect to whom the Secretary of Transportation [(Secretary)] has power to establish qualifications and maximum hours of service" (the MCA exemption). 29 U.S.C. § 213(b)(1) (2018). Under the MCA exemption, the Secretary may exercise power over an employee who "in the performance of his duties moves goods in interstate commerce and affects the safe operation of motor vehicles on public highways." *Deherrera*, 820 F.3d at 1154 (quoting *Foxworthy*, 997 F.2d at 672); *see also* 49 U.S.C. § 31502(b)(2) (2018) (empowering the Secretary to "prescribe requirements for . . . qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation"). Even if the Secretary has not actually exercised jurisdiction, the MCA exemption still applies if the Secretary has the authority to do so. *Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 181 n.2 (11th Cir. 1991).

¶ 12    Federal courts have explained that this exemption applies when an employee's delivery "forms a part of a 'practical continuity of movement' across state lines from the point of origin to the point of destination." *Deherrera*, 820 F.3d at 1155 (citation omitted). The

inquiry is whether "the shipper's 'fixed and persisting intent' was to move the goods in interstate commerce." *Id.* (citation omitted). Thus, even if "the final intended destination at the time the shipment begins is another state, the [MCA exemption] applies throughout the shipment, even as to a carrier that is only responsible for an intrastate leg of the shipment." *Id.* at 1159 (quoting *Project Hope v. M/V IBN SINA*, 250 F.3d 67, 75 (2d Cir. 2001)).

### 2. Wage Order

¶ 13 The Wage Order applies to work "performed within the boundaries of the state of Colorado" for certain industries.[3] Wage Order § 1. The Colorado Department of Labor and Employment (Department) annually promulgates wage orders that regulate "'wages, hours, working conditions and procedures' for certain employers and employees performing work in Colorado." *Chase v. Farmers Ins. Exch.*, 129 P.3d 1011, 1012 (Colo. App. 2004) (citation omitted).

---

[3] The industries covered by the Wage Order include (1) retail and service; (2) commercial support service; (3) food and beverage; and (4) health and medical. Wage Order § 1.

¶ 14    As well, the Wage Order requires that certain covered employees be paid "time and one-half of the regular rate of pay for any work in excess of: (1) forty (40) hours per workweek; (2) twelve (12) hours per workday[;] or (3) twelve (12) consecutive hours . . . whichever calculation results in the greater payment of wages." Wage Order § 4.  Like the FLSA, the Wage Order exempts several categories of employees:

> The following employees or occupations, as defined below, are exempt from all provisions of [the Wage Order]: administrative, executive/supervisor, professional, outside sales employees, and elected officials and members of their staff.  Other exemptions are: companions, casual babysitters, and domestic employees employed by households or family members to perform duties in private residences, property managers, *interstate drivers, driver helpers, loaders or mechanics of motor carriers, taxi cab drivers*, and bona fide volunteers.  Also exempt are: students employed by sororities, fraternities, college clubs, or dormitories, and students employed in a work experience study program and employees working in laundries of charitable institutions which pay no wages to workers and inmates, or patient workers who work in institutional laundries.

*Id.* § 5 (emphasis added).

11

¶ 15    The Wage Order also exempts "[s]alespersons, parts-persons, and mechanics employed by automobile, truck, or farm implement (retail) dealers [and] salespersons employed by trailer, aircraft and boat (retail) dealers," as well as sales employees of retail or service industries, employees of the ski industry, and employees of the medical transportation industry.  *Id.* § 6.

## B.    *Brunson* and *Deherrera*

¶ 16    Both federal and state appellate courts have weighed in on the meaning and scope of the Wage Order's "interstate drivers" exemption.  In *Deherrera,* the Tenth Circuit Court of Appeals considered whether truckers who drove only an intrastate leg of a shipment in interstate commerce were subject to the MCA exemption and the Wage Order's "interstate drivers" exemption.  820 F.3d at 1151.

¶ 17    After concluding that drivers who do not cross state lines, but who nevertheless transport goods in interstate commerce, are exempt under the MCA, the court held that the "interstate drivers" exemption under the Wage Order "should be read in harmony with the meaning of interstate commerce under the [MCA exemption]."  *Id.* at 1161.  The court reasoned that like the Wage Order, the FLSA

12

mandates that employers provide overtime pay to employees who work longer than forty hours a week. *Id.* at 1155; *see* 29 U.S.C. § 207(a). Also, like the Wage Order, the FLSA exempts dozens of similar employee categories from the overtime pay requirement. *Deherrera*, 820 F.3d at 1154. And, the court explained that when read in context, the term "interstate drivers" was not ambiguous, and that because the Wage Order exemptions were patterned after the FLSA exemptions, the two specific exemptions (interstate drivers and MCA) should be read harmoniously. *Id.* at 1160-61. Thus, the Tenth Circuit held that drivers who engage in interstate commerce for purposes of the MCA exemption are also "interstate drivers" under the Wage Order. *Id.* at 1161.

¶ 18    Two years after *Deherrera*, a division of this court considered a similar question in *Brunson* — whether airport shuttle drivers are "interstate drivers" under the Wage Order. Following *Deherrera*, the trial court had granted summary judgment in favor of the employer, Colorado Cab Company, concluding that the "Wage Order's language closely follows" the MCA exemption. *Brunson*, ¶ 7. On appeal, the division reversed. Contrary to *Deherrera*, the *Brunson* division found the term "interstate drivers" ambiguous, reasoning

that it could mean drivers who crossed state lines or drivers who transported goods in interstate commerce without crossing state lines, consistent with the MCA. *Brunson,* ¶¶ 17-18. It therefore looked beyond the express language to discern the term's meaning.

¶ 19 While the division acknowledged the similarities between the Wage Order's and the FLSA's exemption categories, it found these similarities insufficient to conclude that they closely parallel each other, and, thus, it rejected the Tenth Circuit's interpretation in *Deherrera. Id.* at ¶¶ 32-33. Relying instead on the Department's advisory bulletin, the *Brunson* division held that the "term 'interstate drivers' in the Wage Order applies only to drivers whose work takes them across state lines." *Id.* at ¶ 45. And it reasoned that when employees are subject to both federal and state wage laws, the law providing greater protection, or a higher standard, applies. *Id.* at ¶ 40.

## C. Analysis

¶ 20 We begin by agreeing with *Brunson* that states may provide employees with greater benefits than those provided under the FLSA and that the FLSA provides a floor and not a ceiling on compensation. *Brunson,* ¶ 21. We also acknowledge that in cases

like this, where employees are covered by both federal and state minimum wage laws, "the law which provides a higher minimum wage or sets a higher standard shall apply." *Id.* at ¶ 22 (quoting Wage Order Introduction); Wage Order § 22 ("Whenever employers are subjected to both federal and Colorado law, the law providing greater protection or setting the higher standard shall apply."). Finally, we agree that exemptions should be construed narrowly. *Brunson,* ¶ 23.

¶ 21    But we depart from *Brunson*'s conclusion that the federal and state exemptions are not substantially similar; instead, we agree with *Deherrera* that the Wage Order provisions are largely patterned after the FLSA.  Indeed, in addition to interstate drivers, both laws exempt administrative employees; professional and executive employees; outside salesmen; casual babysitters and domestic service companions; driver helpers; taxi cab drivers; and salespersons, parts-persons, and mechanics of retail businesses dealing in automobile, truck, and farm implements.  *Compare* Wage Order § 5, *with* 29 U.S.C. § 213(a)(1), (a)(15), (b)(1), (b)(10)(A), (b)(11), (b)(17).  To be sure, the MCA exempts a far greater number of employee categories than the Wage Order does.  But in our view,

the number of shared, identical exemptions renders them substantially similar. *Cf. Farmer v. Raemisch*, 2014 COA 3, ¶¶ 8-12 (concluding that, although worded differently, the Colorado statute limiting an incarcerated plaintiff's ability to proceed in forma pauperis was sufficiently similar to a federal law that federal courts had concluded did not violate the defendant's right to access the courts). And our supreme court instructs that where a state law is patterned after a federal law or designed to implement its policies, federal courts' constructions "should be accorded great weight." *People v. Gallegos*, 251 P.3d 1056, 1062 (Colo. 2011); *see also In re 2015-2016 Jefferson Cty. Grand Jury*, 2018 CO 9, ¶ 49; *Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 772 (Colo. 2008).

¶ 22    Next, and contrary to *Brunson*, we conclude that the term "interstate drivers" is not reasonably susceptible of more than one reading and, thus, is not ambiguous. *See Deherrera*, 820 F.3d at 1161. Federal appellate decisions have consistently focused on the movement of goods in interstate commerce, from the point of origin to the destination, rather than on the employee's movement. These courts have repeatedly explained that the MCA exemption includes an employee who "in the performance of his duties moves goods in

16

interstate commerce and affects the safe operation of motor vehicles on public highways" thereby, reflecting a concern for safety on all public highways from beginning to end, irrespective of whether a particular employee crosses a state boundary. *Id.* at 1154 (quoting *Foxworthy*, 997 F.2d at 672); *see also United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 553 (1940); *Burlaka v. Contract Transp. Servs. LLC*, 971 F.3d 718 (7th Cir. 2020) (The rationale of the MCA exemption is safety because "[i]t is dangerous for drivers to spend too many hours behind the wheel, and 'a requirement of pay that is higher for overtime service than for regular service tends to . . . encourage employees to seek' overtime work." (quoting *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 657 (1947))). This exemption applies when an employee's delivery "forms a part of a 'practical continuity of movement' across state lines from the point of origin to the point of destination." *Deherrera*, 820 F.3d at 1155 (citation omitted). The inquiry is whether "the shipper's 'fixed and persisting intent' was to move the goods in interstate commerce." *Id.* (citation omitted). Thus, if "the final intended destination at the time the shipment begins is another state, the [MCA exemption] applies throughout the shipment, even as to a carrier that is only

17

responsible for an intrastate leg of the shipment." *Id.* at 1159 (quoting *Project Hope*, 250 F.3d at 75).  That the exemption focuses on the shipper's intent and the movement of goods in interstate commerce is reflected by the exemption's inclusion of "driver[s] and driver's helper[s] making local deliveries," employees who rarely cross state lines to perform their functions.  *See* 29 U.S.C. § 213(b)(11).

¶ 23     Moreover, when interpreting the Department's regulations, we presume the Department was aware of existing case law interpreting the MCA exemption when it promulgated the Wage Order.  *See Larrieu v. Best Buy Stores, L.P.*, 2013 CO 38, ¶ 13 ("When the General Assembly legislates in a particular area, we presume it was aware of existing case law precedent.").  Indeed, the principle that intrastate transport may still be interstate in character "when it forms a part of a 'practical continuity of movement' across state lines from the point of origin to the point of destination," *Foxworthy*, 997 F.2d at 672 (quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943)), was established well before the Wage Order took effect on December 30, 2014.  *See, e.g., id.* (holding that a dairy delivery driver who delivered products

intrastate only transported goods in interstate commerce and was exempt under the MCA exemption); *Abel v. S. Shuttle Servs., Inc.*, 631 F.3d 1210 (11th Cir. 2011) (holding that an airport shuttle driver transported people and goods in interstate commerce and fell within the MCA exemption); *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 229 (2d Cir. 2002) (holding that a beer distributor driver making intrastate deliveries was transporting goods in interstate commerce and was subject to the MCA exemption); *see also Southland Gasoline Co. v. Bayley*, 319 U.S. 44, 48 (1943) ("By exempting the drivers of motors from the maximum hour limitations of the [FLSA], Congress evidently relied upon the Motor Carrier [Act] provisions to work out satisfactory adjustments for employees charged with the safety of operations in a business requiring fluctuating hours of employment, without the burden of additional pay for overtime.").

¶ 24 Finally, knowing the body of federal case law exempting drivers who drive only an intrastate leg of a longer journey, the Department did not add language to the Wage Order limiting the term "interstate drivers" to those who cross state boundaries. And we may not read a restriction into the Wage Order that was not

placed there by the Department.[4] *See E-470 Pub. Highway Auth. v. Revenig,* 140 P.3d 227, 229 (Colo. App. 2006) ("We may not read into a statute an exception that its plain language does not suggest, warrant, or mandate.").

¶ 25   We are not persuaded that the Wage Order's provision on dual jurisdiction compels a different result.  Just because the Wage Order *may* offer greater protections than the federal law does not necessarily mean that it does so.  Absent any indications that the Wage Order's "interstate drivers" exemption applies only to drivers who cross state lines, we conclude that the Wage Order's "interstate drivers" exemption mirrors the MCA exemption in scope.[5]

---

[4] We note that, following the *Brunson* decision, the Department promulgated the Colorado Overtime and Minimum Pay Standards Order No. 36, 7 Code Colo. Regs. 1103-1 (effective Mar. 16, 2020), https://perma.cc/3GQJ-SGSK (COMPS Order).  This order exempts "interstate transportation workers" and includes "an employee who is a driver . . . if the employee crosses state lines in the course of his or her work."  COMPS Order, Rule 2.2.6(A).  Because the COMPS Order was not in effect at the time Employees worked for JP Trucking, our opinion does not address the scope of the COMPS Order.

[5] We acknowledge that the Advisory Bulletin, unlike the Wage Order, separately defines the term interstate driver and that the *Brunson* division relied on this definition to reach its decision. However, because we do not find this term ambiguous, we need not consult additional interpretive aids.  *See Lewis v. Taylor,* 2016 CO

20

¶ 26    Nor are we persuaded that our holding runs afoul of the maxim that we should narrowly construe exemptions.  While "exemptions, such as the overtime pay exemption, should be construed narrowly," *Brunson*, ¶ 23, the *Brunson* division did not explain why the Wage Order's "interstate drivers" exemption should necessarily be construed *more narrowly* than the MCA exemption.  *See Deherrera*, 820 F.3d at 1154 (noting that FLSA exemptions — such as the MCA exemption — should be narrowly construed against employers (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960))).  As previously noted, if the Department had intended to afford interstate drivers greater protections than drivers subject to the MCA exemption, it could have done so by defining an interstate driver as one who crosses state lines.  Therefore, we

---

48, ¶ 20 ("If the statutory language is clear, we apply it as such. But if the statutory language has more than one reasonable meaning, and is therefore ambiguous, we may look to interpretive aids to construction to resolve the ambiguity and determine which of the reasonable interpretations is appropriate.") (citation omitted). And even if we found the term interstate driver ambiguous, we agree with the *Brunson* division's observation that "we do not give the Advisory Bulletin the same deference that an agency's interpretation arrived at after notice-and-comment rulemaking would warrant under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984)."  *Brunson*, ¶ 37.

conclude that the "interstate drivers" Wage Order exemption includes employees who are subject to the MCA exemption, and includes employees who do not cross state lines so long as the transport itself "forms a part of a 'practical continuity of movement' across state lines from the point of origin to the point of destination." *Foxworthy*, 997 F.2d at 672 (quoting *Walling*, 317 U.S. at 568).

### D. Application

¶ 27 The trial court's findings on limited remand establish that Employees are subject to the MCA exemption and that JP Trucking satisfied its burden of proving that it transported goods in interstate commerce, despite some of those transports occurring intrastate. Neither party disputes this ruling. Because we decline to follow *Brunson*'s holding, those same findings establish that Employees are "interstate drivers" under the Wage Order and are similarly exempted from overtime pay.

¶ 28 Accordingly, we reverse the trial court's judgment under the Wage Order and remand the case with directions to vacate the damages award. Because we reverse the judgment, we need not address JP Trucking's remaining contentions concerning damages.

## III. Conclusion

¶ 29    The judgment is reversed, and the case is remanded with directions to enter judgment for JP Trucking and to vacate the damages award.

JUDGE DUNN and JUDGE BROWN concur.