889 P.2d 853

Robert JOHNSEN, Plaintiff–Appellant,

v.

ALLSUP'S CONVENIENCE STORES, INC., Defendant–Appellee.

No. 15512.

Court of Appeals of New Mexico.

Oct. 28, 1994.

Certiorari Denied Jan. 25, 1995.

Leeann Ortiz, Albuquerque, for plaintiff-appellant.

William A. L'Esperance, Albuquerque, for defendant-appellee.

## OPINION

APODACA, Judge.

Plaintiff Robert Johnsen (Employee) appeals from the trial court's grant of summary judgment in favor of Defendant Allsup's Convenience Stores, Inc. (Employer). Employee's complaint sought unpaid overtime wages pursuant to the Fair Labor Standards Act of 1938 (the Act), 29 U.S.C. Sections 201 to 219 (1988). Summary judgment was granted on the basis that Employer was exempt from paying overtime under the Act and the Motor Carrier Act (MCA), 49 U.S.C. Sections 3102 through 3104 (1988). Employee advances three separate issues on appeal that together raise the essential question we address: Did Employee, in transporting certain parts necessary to repair equipment owned by Employer at its various retail stores located in New Mexico, engage in the transportation of goods in interstate commerce, thus bringing into play the exemption provisions of the MCA and the Act, which together exempt such employees from the overtime requirements of the Act?

We conclude that, as a matter of law, Employee engaged in the transportation of *intrastate* commerce when transporting parts obtained from Employer's warehouse in Clovis. Similarly, we conclude that, as a matter of law, Employee engaged in the transportation of *intrastate* commerce when transporting parts specially purchased from local wholesalers, when such parts were already in stock at the wholesalers' places of business in New Mexico. We hold, however, that Employee engaged in the transportation of *interstate* commerce when transporting

parts specially ordered from local wholesalers, when such parts were shipped to those local wholesalers from out-of-state suppliers to fill Employee's special orders. We also hold that a genuine issue of material fact existed concerning to what extent Employee's job entailed transporting parts specially ordered from local wholesalers. Because a genuine issue of material fact existed on such orders, we hold that the trial court erred in granting summary judgment in favor of Employer on that particular question. We therefore reverse and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Employer is a retail business that operates convenience stores in several states. Employee was employed by Employer from July 1989 through October 1991, as the district maintenance person for Employer's Albuquerque district, a district located solely within New Mexico. In such capacity, Employee performed a variety of duties, including the repair, maintenance, and installation of store equipment and fixtures. His duties required him to initiate orders for parts, equipment, and fixtures as necessary to maintain the stores in his district.

To service each store within his district, Employee was assigned a truck owned by Employer, in which he maintained an inventory of parts and supplies. When he needed parts not carried in the truck, Employer's purchasing department would send him the required parts from Employer's supply warehouse in Clovis, New Mexico. If Employer's warehouse did not have the parts in stock, Employee would purchase the parts from local wholesalers using a purchase order number acquired from Employer's purchasing department. If the wholesaler did not have the parts in stock, it would place a special order for the parts, occasionally from out-of-state suppliers. Before ordering any parts from wholesalers, Employee was required to designate, on the purchase order form, the specific store for which the parts were ordered. When the parts arrived, Employee would pick them up from the whole-

saler and install them in the specific store for which he had ordered them.

While employed by Employer, Employee regularly worked more than forty hours per week. Employer did not, however, compensate Employee at one and one-half his hourly rate for hours worked in excess of a forty-hour work week as required by the Act. *See* 29 U.S.C. § 206.

Both parties filed motions for summary judgment, arguing that the facts supporting their motions were undisputed. In support of its motion, Employer argued that Employee was exempt from the overtime compensation provisions of the Act, under 29 U.S.C. Section 213(b)(1), because Employee fell within the provisions of the MCA. Employer contended that, because Employee was a truck driver engaged in interstate commerce, he was subject to the jurisdiction of the Secretary of Transportation under the MCA, thus triggering the exemption under the Act.

In granting Employer's motion and denying Employee's motion, the trial court held that Employee was not entitled to receive overtime compensation because he transported goods in interstate commerce. Although the trial court's ruling was within the context of a summary judgment proceeding, the trial court inappropriately entered findings of fact. Specifically, the trial court found:

> 15. As ... more than [an] incidental part of his duties, [Employee] did receive parts shipped from outside the State of New Mexico and transported those parts by motor vehicle to their final destination within the State of New Mexico.
>
> . . . .
>
> 17. The parts that had their shipment originate outside the State of New Mexico and that [Employee] transported by motor vehicle to their final destination within the State of New Mexico had their place of final destination in New Mexico designated prior to the origination of their shipping.
>
> 18. The parts that had their shipment originate outside the State of New Mexico and that were shipped to a pre-designated final destination within the State of New Mexico constituted goods in interstate commerce.

19. As ... more than [an] incidental part of his ... duties, [Employee] was expected to transport by motor vehicle goods in interstate commerce.

20. As ... more than [an] incidental part of his ... duties, [Employee] transported by motor vehicle goods in interstate commerce; said goods were transported by [Employee] prior to the end of the interstate nature of their transportation.

Based on these findings, the trial court concluded that Employer was exempt from paying overtime compensation to Employee under the Act. The trial court later denied Employee's motion for reconsideration. This appeal followed.

## II. DISCUSSION

### A. General

Employer is an enterprise engaged in commerce as defined by 29 U.S.C. Sections 203(r) and 203(s) (Supp. IV 1993) of the Act. Thus, Employer's employees are covered by the Act's minimum wage and overtime provisions, unless otherwise exempted. *See* 29 U.S.C. §§ 206, 207, 213. Section 207(a)(1) contains the foundation for the overtime provisions of the Act. It states:

[N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

These overtime requirements do not apply, however, to employees for "whom the Secretary of Transportation has power to establish qualifications and maximum hours of service" under Section 3102 of the MCA, 49 U.S.C. Section 3102. 29 U.S.C. § 213(b)(1).[1] "Because of the importance of the overtime pro-

visions in fostering the smooth flow of interstate commerce, [an] employer seeking the exemption bears the burden of proving [its] entitlement to it." *Sinclair v. Beacon Gasoline Co.*, 447 F.Supp. 5, 9 (W.D.La.1976) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Brennan v. Bill Kirk's Volkswagen*, 497 F.2d 892, 894 (4th Cir.1974); *Brennan v. Greene's Propane Gas Serv., Inc.*, 479 F.2d 1027, 1032 (5th Cir.1973)), *aff'd*, 571 F.2d 978 (5th Cir.1978).

■ The purpose of the MCA is to allow the Secretary of Transportation to regulate the safety of motor vehicle travel on the nation's highways. *Sinclair*, 447 F.Supp. at 9. The Secretary of Transportation's power to regulate under the MCA, however, is limited to those employees whose activities affect the safety of operation of motor vehicles transporting property in interstate commerce. *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 669–70, 67 S.Ct. 931, 941–42, 91 L.Ed. 1158 (1947); *United States v. American Trucking Ass'ns*, 310 U.S. 534, 553, 60 S.Ct. 1059, 1068, 84 L.Ed. 1345 (1940); *see* 49 U.S.C. §§ 3102, 10521 (1988). Therefore, for Employee to fall within the "motor carrier exemption" provisions of the Act, his duties, or a substantial part of those duties, must have affected the safety of operation of motor vehicles and involved the transportation of property in interstate commerce. *See Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 706–09, 67 S.Ct. 954, 959–61, 91 L.Ed. 1184 (1947). Only then would the Secretary of Transportation have the power to regulate Employee under the MCA, thus making him exempt for overtime compensation under the Act.

■ Here, it is clear that Employee, as part of his duties for Employer, drove a truck on the highways of New Mexico and that he transported parts, equipment, and fixtures in that truck. The question of the Secretary of Transportation's power to pre-

---

**1.** "This authority, previously vested in the Interstate Commerce Commission, was transferred to the Department of Transportation in 1983." *Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670, 672 n. 2 (10th Cir.1993). Many of the cases we refer to originated before the 1983 change and thus construe the former delegation of authority to the Interstate Commerce Commission. Because this case arose after the 1983 transfer of authority, however, we discuss the applicability of the Motor Carrier Act in the context of the Secretary of Transportation, not the Interstate Commerce Commission.

scribe qualifications and maximum hours of service for Employee turns upon the question of whether Employee, whose duties were performed solely within New Mexico, was engaged in transporting property in interstate commerce. Such transportation can be accomplished in one of two ways: (1) by a motor vehicle being driven across state lines; or (2) where a motor vehicle is operated wholly upon the highways of a single state, but the transportation performed is part of a continuous movement originating in or destined to a point in another state. Because Employee did not cross state lines in the performance of his duties for Employer, any interstate transportation of parts by Employee, if it occurred, must therefore be premised on the second method, a continuous movement originating in or destined to a point in another state.

Transportation of parts within a single state may remain "interstate" in character when it forms part of a "practical continuity of movement" across state lines from the point of origin to the point of final destination. *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 568, 63 S.Ct. 332, 335, 87 L.Ed. 460 (1943); *Foxworthy,* 997 F.2d at 672. "The characterization of such transportation as interstate or intrastate depends upon the 'essential character' of the shipment." *Foxworthy,* 997 F.2d at 672 (citing *Texas & N.O.R.R. v. Sabine Tram Co.,* 227 U.S. 111, 122, 33 S.Ct. 229, 233, 57 L.Ed. 442 (1913)). " ' "Crucial to a determination of the essential character of a shipment is the shipper's fixed and persisting intent at the time of the shipment." ' " *Id.* (quoting *International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers v. Interstate Commerce Comm'n,* 921 F.2d 904, 908 (9th Cir.1990) (citation omitted)). There is no fixed and persisting intent to ship goods in interstate commerce where:

(i) [a]t the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination beyond the terminal storage, and (ii) the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated, and (iii) transportation in the furtherance of

this distribution within the single State is specifically arranged only after sale or allocation from storage.

29 C.F.R. § 782.7(b)(2) (1993).

**B. The Different Shipments**

Under the facts in this appeal, two different types of parts or shipments were involved. First, the parts that were shipped from out-of-state suppliers directly to Employer's warehouse in Clovis where they were stored until needed. Second, the parts that were specially ordered from local wholesalers by Employee. We discuss each separately.

### 1. Parts Shipped to Employer's Warehouse

Applying the test set out in 29 C.F.R. Section 782.7(b)(2), we conclude, as a matter of law, that the parts shipped to Employer's warehouse and stored for future use, as needed, were no longer "interstate in nature" when transported by Employee because the supplier's intent at the time of shipment was to deliver the parts directly to Employer's supply warehouse. It is clear that, when the parts were shipped, Employer's warehouse in Clovis, and not any specific store, was the intended destination of the parts. *See* 29 C.F.R. § 782.7(b)(2)(i); *Walling v. Mutual Wholesale Food & Supply Co.,* 46 F.Supp. 939, 949 (D.Minn.1942). Employer's warehouse was a distribution point from which the parts were allocated to maintenance personnel as needed. *See* 29 C.F.R. § 782.7(b)(2)(ii). Additionally, distribution of the parts to Employer's retail stores was "specifically arranged only after ... allocation from storage." *See* 29 C.F.R. § 782.7(b)(2)(iii). *But cf. Foxworthy,* 997 F.2d 670 (route sales representative taking delivery of goods intended for ultimate delivery to a particular store); *Griffin v. Consolidated Foods Corp.,* 771 F.2d 826 (4th Cir. 1985) (same).

In *Beggs v. Kroger Co.,* 167 F.2d 700, 703 (8th Cir.1948), the Eighth Circuit concluded that purely intrastate segments of transportation are not part of interstate commerce if the product comes to rest within the

state. Questions of " 'movement,' cessation of movement, interruption of movement are each factual matters." *Kline v. Wirtz*, 373 F.2d 281, 282 (5th Cir.1967). Here, the record indicates that the parts involved clearly came to rest in Employer's warehouse in Clovis. Thus, it necessarily follows that, when Employee transported the parts by truck to Employer's retail stores, he engaged in intrastate, not interstate commerce.

### 2. Parts Shipped to Wholesalers

When the necessary parts could not be obtained from Employer's Clovis warehouse, Employee would purchase the parts from local wholesalers. If the wholesaler did not have the parts in stock, it would specially order the parts for Employee, occasionally from out-of-state suppliers. Thus, the parts purchased by Employee from local wholesalers can be divided into two categories: (1) those parts that the wholesaler already had in stock at its place of business in New Mexico; and (2) those parts that the wholesaler did not have in stock and had to specially order from out-of-state suppliers. We discuss each separately.

#### a. Parts in Stock at Wholesaler's Warehouse

Based on our analysis of "Parts Shipped to Employer's Warehouse," above, we conclude that, as a matter of law, the parts purchased by Employee from local wholesalers, which the wholesaler already had in stock at its place of business in New Mexico, were no longer "interstate in nature" when transported by Employee. Thus, to the extent that Employee transported these parts, Employee engaged in *intrastate* commerce.

#### b. Parts Shipped to Wholesaler from Out-of-State Suppliers

Employee also transported parts that he purchased from local wholesalers, which the wholesalers did not have in stock and had to specially order for Employee from out-of-state suppliers. Employee ordered these parts from the local wholesalers with the intent at the time of purchase that the parts would be installed in a specific store. Employer argues that, because Employee or-

dered these parts with the definite intention that such parts would be installed in a specific store, they were interstate in character. Employer contends that the parts had a continuity of movement across state lines from their point of origin out of state to their final point of destination in an Employer's retail store. We agree. We conclude that the parts ordered by Employee from local wholesalers, which were shipped to the wholesalers from out-of-state suppliers specifically for Employee, constituted goods in interstate commerce.

Our conclusion is supported by the United States Supreme Court's decision in *Jacksonville*, 317 U.S. at 568–70, 63 S.Ct. at 335–36. There, the Court sorted deliveries of goods into three categories: (1) those purchased by a wholesaler upon the order of a customer with the definite intention that such goods shall be carried at once to the customer; (2) those obtained by a wholesaler from the manufacturer or supplier to meet the needs of specified customers pursuant to some understanding with the customer, though not for immediate delivery; and (3) those based on anticipation of the needs of specific customers, rather than upon prior orders or contracts. The Court found that goods in the first and second categories remained "in commerce" and their interstate journey ended only when delivered to retail customers. *Id.* at 568–69, 63 S.Ct. at 335–36. Because the parts purchased by Employee from local wholesalers fall into category one, they remained "in commerce" until delivered to their final destination. It was only through Employee's transportation of these parts that they ultimately reached their final, intended destination. Consequently, Employee's movement of the specially-ordered parts constituted interstate transportation.

■ Employee argues, however, that he did not transport parts in interstate commerce because the parts he purchased from local wholesalers had "come to rest" with the wholesalers before he transported them to their designated store. Employee thus contends that he engaged only in intrastate transportation. We are not persuaded. "The entry of the goods into the warehouse interrupts but does not necessarily terminate

their interstate journey. A temporary pause in their transit does not mean they are no longer 'in commerce' within the meaning of the Act." *Jacksonville,* 317 U.S. at 568, 63 S.Ct. at 335. Besides, if the halt in the movement of goods is a convenient intermediate step in the process of getting them to their final destination, they remain in commerce until they reach it. *Id.*

We conclude that the parts Employee ordered from local wholesalers, which the wholesalers did not have in stock and had to specially order from out-of-state suppliers, only temporarily paused in transit when delivered to the wholesaler. The "halt in the movement" of the parts at the wholesaler's warehouse was only a convenient intermediate step in the movement of the parts to their final destination, the specific store Employee had ordered the parts for. This is because the specific retail store designated at the time of ordering, and not the wholesaler's warehouse, was the final destination of the parts.

### C. Genuine Issue of Material Fact

We have determined thus far that Employee transported both intrastate and interstate goods in commerce. The trial court granted summary judgment in favor of Employer on the basis that Employee transported goods in interstate commerce "[a]s more than [an] incidental part of his duties." Employee argues, however, that his transportation of parts interstate in nature was an insubstantial part of his duties, and therefore falls within the *de minimis* exception of *Pyramid,* 330 U.S. 695, 67 S.Ct. 954. If the duties Employee performed relating to safety or interstate commerce were *de minimis* in relation to his other duties, then the Secretary of Transportation had no power to regulate Employee and the "motor carrier exemption" to the Act is not applicable.

We conclude that a genuine issue of material fact existed concerning what percentage of Employee's duties directly related to interstate commerce and whether such percentage was *de minimis* in relation to his other duties. *See Morris v. McComb,* 332 U.S. 422, 423, 68 S.Ct. 131, 131, 92 L.Ed. 44 (1947) (Interstate Commerce Commission

had power to establish qualifications and maximum hours of service for drivers when interstate business was from three to four percent of total business and was carried on indiscriminately with intrastate business); *Coleman v. Jiffy June Farms, Inc.,* 324 F.Supp. 664, 669–71 (S.D.Ala.1970) (interstate activities of drivers were *de minimis* because each driver averaged only 0.00343 percent of his time in interstate activity), *aff'd,* 458 F.2d 1139 (5th Cir.1971), *and cert. denied,* 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). Thus, even though Employee transported goods in interstate commerce, and such transportation may have been a regular part of his duties, he may have performed such transportation only on rare occasions. If Employee transported goods in interstate commerce only on rare occasions, then such interstate transportation may have been only a *de minimis* part of his duties. It is not clear from the record that the facts on this question were undisputed. In fact, it is not clear that the trial court even addressed this issue. Its resolution should therefore be left to the province of the fact finder. We therefore reverse the grant of summary judgment in favor of Employer. *See Monett v. Dona Ana County Sheriff's Posse,* 114 N.M. 452, 454, 840 P.2d 599, 601 (Ct.App.1992) (summary judgment appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law).

### III. CONCLUSION

We hold that the trial court erred, as a matter of law, in holding that Employee engaged in interstate commerce when delivering parts obtained from Employer's supply warehouse. We also conclude that the trial court erred, as a matter of law, in holding that Employee engaged in interstate commerce when delivering parts obtained from local wholesalers, when the wholesaler already had the parts in stock. Additionally, we conclude that, with respect to the parts specially ordered from local wholesalers, when such parts had to be specially ordered from out-of-state suppliers because the wholesaler did not have the parts in stock, a genuine issue of material fact existed on the

question of the extent Employee's job entailed transporting those parts. We thus reverse the grant of summary judgment in favor of Employer and remand for further proceedings consistent with this opinion. We award costs to Employee on appeal.

IT IS SO ORDERED.

DONNELLY and FLORES, JJ., concur.