**Keith THOMPSON and Roha Rodriguez, Plaintiffs,**

v.

**ELDORADO COFFEE ROASTERS LTD., Defendant.**

**15–CV–6442 (WFK) (JO)**

United States District Court, E.D. New York.

Signed March 29, 2017

Filed March 30, 2017

---

David Abrams, David Abrams, Attorney at Law, New York, NY, for Plaintiffs.

Domenique Camacho Moran, Heather P. Harrison, Farrell Fritz, P.C., Uniondale, NY, for Defendant.

## DECISION & ORDER

WILLIAM F. KUNTZ, II, United States District Judge:

Keith Thompson ("Plaintiff") brings this action seeking unpaid overtime benefits under the Fair Labor Standards Act of 1938 (the "FLSA" or the "Act"), 29 U.S.C. § 201 *et seq.*, and parallel provisions of New York Labor Law ("NYLL"), N.Y. Lab. § 650 *et seq.*, as well as recovery for failure to provide wage notifications under the New York Wage Theft Prevention Act, N.Y. Lab. § 195. *See generally* Second Am. Compl. ("SAC"), ECF No. 15. His employer, Eldorado Coffee Roasters Ltd. ("Defendant" or "Eldorado"), moves to dismiss Plaintiff's FLSA and NYLL claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing Plaintiff is exempt from the FLSA's overtime requirements under the so-called "Motor Carrier Act exemption," 29 U.S.C. § 213(b)(1) ("MCA exemption"). *See generally* Def.'s Mem. Supp. Partial Mot. Dismiss ("MTD"), ECF No. 19–1. As the facts pleaded are insufficient for this Court to determine whether the exemption applies, Defendant's motion is DENIED.[1]

## BACKGROUND [2]

Eldorado is a beverage product company that, *inter alia*, imports and roasts coffee

beans. SAC ¶¶ 7, 16–17; *see also* MTD at 1–2. Eldorado imports its beans from around the world, roasts them at its facilities in Pennsylvania and New York, and then delivers them to customers, including in New York. SAC ¶¶ 16–17; *see also* MTD at 1–2. Eldorado operates in interstate commerce and, at all relevant times, had gross annual sales of at least $500,000.00, making it subject to the FLSA. SAC ¶¶ 16–19. Plaintiff has been a delivery truck driver for Eldorado for approximately six years. *Id.* ¶ 8. Until approximately 2014, Plaintiff regularly worked more than 40 hours per week, often 50 or more, but was not paid overtime wages. *Id.* ¶¶ 9–10.

## PROCEDURAL HISTORY

Plaintiff initiated the instant action on November 10, 2015. Compl., ECF No. 1. He amended his Complaint on December 3, 2015, *see* Am. Compl., ECF No. 5,[3] and again on March 13, 2016, *see* SAC. Defendant answered the Amended Complaint on December 23, 2015, *see* Answer, ECF No. 8, and amended its Answer on February 26, 2016, *see* Am. Answer, ECF No. 14. Defendant denied all of the allegations in the Amended Complaint and asserted eight affirmative defenses, including that Plaintiff's claims are barred by the MCA exemption. *See* Am. Answer ¶ 21. Defendant filed its fully-briefed motion to dismiss on June 27, 2016, *see* MTD; Pl.'s Mem. Opp. to MTD ("Opp."), ECF No. 19–2; Def.'s Reply Memo. ("Reply"), ECF No. 19–3, and this Court held oral argument on

---

1. The parties made several factual proffers at oral argument but did not clearly establish the applicability of the MCA exemption, so this Court declines to convert this motion to one for summary judgment pursuant to Federal Rule of Civil Procedure 12(d) and does not consider any materials outside the pleadings in deciding this motion.

2. For the purposes of resolving the motion to dismiss, the Court assumes all well-pleaded

facts in the Second Amended Complaint to be true, drawing all reasonable inferences in favor of Plaintiff. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002).

3. A second plaintiff, Roha Rodriguez, was added to the action at this time, but her claims were subsequently dismissed. *See* ECF No. 36.

January 18, 2017. The parties were invited to submit supplemental briefing on the MCA exemption, and Plaintiff did so. *See* Pl.'s Supp. Letter, ECF No. 37.

## STANDARD OF REVIEW

■ To survive a motion to dismiss, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Di-Folco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court may dismiss a complaint that "rais[es] an affirmative defense 'if the defense appears on the face of the complaint.'" *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)); *see also* 5B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1357 (3d ed. 2016) ("[T]he complaint also is subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy, but for this to occur, the applicability of the defense has to be clearly indicated and must appear on the face of the pleading to be used as the basis for the motion").

## ANALYSIS

### I. The Motor Carrier Act Exemption to the FLSA

■ Defendant's motion to dismiss hinges on whether the MCA exemption applies to Plaintiff, which would exempt him from the overtime provisions of the FLSA.[4] Under the MCA exemption, certain motor carrier operations are exempt from the FLSA and are instead subject to regulation by the Secretary of Transportation. 29 U.S.C. § 213(b)(1). Covered operations include "motor private carrier[s]," which are enterprises that do not primarily provide transportation services but rather transport goods they own for sale or similar.[5] 49 U.S.C. § 13102(15); *see also id.* § 31502(b)(2) ("The Secretary of Transportation may prescribe requirements for . . . maximum hours of service of employees of . . . a motor private carrier."). An employee falls within the MCA exemption if his "activities . . . directly affect[ ] the safety of operation of motor vehicles . . . in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a). Truck drivers may thus be covered by the MCA exemption. *See Fox v. Commonwealth Worldwide Chauffeured Transp. of N.Y., LLC*, 865 F.Supp.2d 257, 266 (E.D.N.Y. 2012) (Garaufis, J.) ("There are four broad categories of workers whose duties are said to

---

**4.** The NYLL incorporates the FLSA's exemptions, including the MCA exemption. *Khan v. IBI Armored Servs.*, 474 F.Supp.2d 448, 450 & n. 1 (E.D.N.Y. 2007) (Vitaliano, J.).

**5.** "The term 'motor private carrier' means a person, other than a motor carrier, transporting property by motor vehicle when—(A) the transportation is as provided in section 13501 of this title; (B) the person is the owner, lessee, or bailee of the property being transported; and (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise." 49 U.S.C. § 13102(15).

directly affect the safety of vehicle operation: drivers, mechanics, loaders, and helpers of the first three.").

■ The MCA exemption may apply even if a truck driver does not cross state boundaries so long as "a substantial part of [his] . . . activities relate[ ] to goods . . . mov[ing] in the channels of interstate commerce." *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 572, 63 S.Ct. 332, 87 L.Ed. 460 (1943); *see also* 29 C.F.R. § 782.7(b)(1) ("Transportation within a single State is in interstate commerce within the meaning of the [FLSA] . . . where it forms a part of a 'practical continuity of movement' across State lines from the point of origin to the point of destination."). As a result, delivery route drivers who do not cross state lines may be covered by the MCA exemption if "the 'essential character' of [a] shipment is interstate in nature." *Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1155 (10th Cir. 2016) (quoting *Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670, 672 (10th Cir. 1993)); *see also, e.g., Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 224–25 (2d Cir. 2002) (finding "the interstate commerce requirement" to be satisfied where intrastate route driver picked up empty bottles and cans intended for shipment out of state).

■ Where a shipment has come to rest in a warehouse before being transported intrastate, the Supreme Court has indicated that "[t]he entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey." *Walling*, 317 U.S. at 568, 63 S.Ct. 332. Rather, the goods remain in interstate commerce "if the halt in the movement of the goods is [only] a convenient intermediate step in the process of getting them to their final destinations." *Id.* Courts have subsequently interpreted the Court's guidance on this issue to mean:

If the shipper's fixed and persisting transportation intent at the time of in-

terstate shipment was to deliver an item to a specified customer who had ordered the item, regardless of whether it was stored temporarily intrastate, the [MCA] exemption applies. On the other hand, the [MCA] exemption does not apply where items are delivered from out of state to an intrastate location, such as a warehouse, for future delivery to customers yet to be identified. In other words, the exemption is inapplicable where the final destination of any shipment is not decided until after the goods had come to rest in the warehouse.

*Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F.Supp.3d 232, 250 (S.D.N.Y. 2015) (Karas, J.) (quoting *Masson v. Ecolab, Inc.*, 04–CV–4488, 2005 WL 2000133, at *6 (S.D.N.Y. Aug. 17, 2005)). Consequently, courts look to whether " 'the intended final destination' " of the shipment "was envisaged at the time the transportation commenced." *Bilyou*, 300 F.3d at 223–24 (2d Cir. 2002) (quoting *Project Hope v. M/V IBN SINA*, 250 F.3d 67, 74 (2d Cir. 2001)); *see also Klitzke v. Steiner Corp.*, 110 F.3d 1465, 1470 (9th Cir. 1997) (determining MCA exemption applied to intrastate travel of goods intended for specific customers at the time they were warehoused).

The Interstate Commerce Commission ("ICC") has provided some guidance on this issue, ruling that "there is [no] fixed and persisting intent" to send goods to a particular destination beyond "the . . . storage point at the time of shipment," when:

(i) At the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination beyond the terminal storage, and

(ii) the terminal storage is a distribution point or local marketing facility

from which specific amounts of the product are sold or allocated, and

(iii) transportation in the furtherance of this distribution within the single State is specifically arranged only after sale or allocation from storage.

29 C.F.R. § 782.7(b)(2) (citing *Ex parte No. MC–48* (71 M.C.C. 17, 29)). The Department of Labor ("DOL") later adopted this test in its regulations regarding the MCA exemption. *See id.* Some courts, however, have found that the factors enumerated by the ICC, while instructive, do not encompass the entire relevant analysis. For instance, the Tenth Circuit has enumerated a number of factors that may be relevant to this determination, including:

[T]he length of time movement of the product is interrupted by storage; whether the distribution center has a low "through-put" compared to its storage capability; whether the products are shipped on a "predetermined" ordering cycle; whether the carrier is in continuous possession of the product until delivery; whether the product is processed or commingled in any way at the storage location; whether the final destination is designated by the out-of-state shipper or by an instate intermediator; whether the goods were intended for particular customers; and whether temporary storage simply provides an efficient opportunity to convert the means of delivery from one form of transportation to another.

*Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670, 673 (10th Cir. 1993).

Further muddying the waters, the DOL has suggested that where the items are fungible and shipped from their producer to its customers, the "fixed and persisting transportation intent" of the shipper to deliver products to specific customers is not dispositive as to the shipment's interstate nature. Specifically, the DOL indicated in its Field Operations Handbook for its Wage and Hour Division that a company does not interrupt the flow of interstate commerce where:

[T]he shipper is also the importer, as would be the case where a manufacturer, such as a bakery, produces goods in one state and moves them through his distribution point in another state to his customers in that state [and] [t]he employer, as the shipper, knows at the time of the shipment what he intends to do with the goods after they reach his out-of-state distribution point. If, as would normally be the case, there is a practical continuity of movement of the out-of-state goods through the firm's distribution point to its customers, this is sufficient to establish a "fixed and persisting transportation intent" beyond the distribution point. . . .

U.S. Dep't of Labor, Field Operations Handbook § 24d02(b) (Rev. 690, May 23, 2016), https://www.dol.gov/whd/FOH/FOH_Ch24.pdf. Under this analysis, the "practical continuity of movement" could be controlling even if shipments are not made pursuant to particular customer orders.

▮▮▮▮ Against this background, the determination whether the MCA exemption applies to route drivers who operate wholly within one state is a case-specific and highly fact-intensive inquiry.[6] Indeed, the

---

**6.** For instance, the MCA exemption does not apply to drivers of vehicles that "weigh 10,000 pounds or less." *Carter v. Tuttnaeur U.S.A. Co.*, 78 F.Supp.3d 564, 569 (E.D.N.Y. 2015) (Spatt, J.) (citing SAFETEA–LU Technical Corrections Act of 2008, Pub. L. No. 110–244, §§ 305–06, 122 Stat. 1572, 1620–21

(2008)). Defendant suggests in its Reply that Plaintiff has purposefully omitted undisputed facts, including the weight of his delivery vehicle, to avoid having this Court determine that the MCA exemption applies. Reply at 3–4. Even if Plaintiff had admitted the circumstances Defendant suggests to be true, howev-

determination could hinge on fine distinctions, such as whether products are shipped into the state before or after a specific order is received.[7] *Compare Osorio v. Mathews Prime Meats, Inc.,* 101 F.Supp.3d 255, 260 (E.D.N.Y. 2015) (Spatt, J.) (finding delivery truck drivers for meat products seller were only covered by MCA when delivering products ordered from out of state for delivery to specific customers), *with McGuiggan v. CPC Int'l, Inc.,* 84 F.Supp.2d 470, 483 (S.D.N.Y. 2000) (McMahon, J.) (finding intrastate delivery drivers for New York distributor of English muffins covered by MCA exemption where muffins were brought to storage depot from New Jersey). In this instance, the Court is equipped with few facts about Plaintiff's employment other than that Plaintiff drives an intrastate delivery route for products that may have arrived from out of state. As such, the pleadings do not offer a factual basis upon which the Court can determine whether the MCA exemption applies and therefore the Court cannot grant Defendant's motion on that basis.

### A. The Burden of Proof as to the MCA Exemption

 Defendant also argues the SAC should be dismissed because, even if this Court cannot determine whether the MCA exemption applies, Plaintiff bore the burden to show that it did not, and he failed to do so. Certainly, FLSA plaintiffs are not bound to plead the absence of any affirmative defenses in order to survive a motion to dismiss. *See Nakahata v. N. Y.-Presbyterian Healthcare Sys., Inc.,* 723 F.3d 192, 200 (2d Cir. 2013) (enumerating the elements of an FLSA overtime claim (citing 29. U.S.C. § 207(a))). To the contrary, an affirmative defense "may be raised in a pre-answer Rule 12(b)(6) motion [only] if the defense appears on the face of the complaint, ... [and a plaintiff] is not required to plead the absence of such a defense." *Chen v. Major League Baseball Props., Inc.,* 798 F.3d 72, 81 (2d Cir. 2015) (internal quotation marks and citations omitted). This is particularly true for the FLSA, a remedial law for which the exemptions "are to be narrowly construed against the employers seeking to assert them." *Davis v. J.P. Morgan Chase & Co.,* 587 F.3d 529, 531 (2d Cir. 2009) (internal quotation marks and citations omitted).

In arguing Plaintiff's claims should be dismissed for failure to plead the inapplicability of an affirmative defense, Defendant relies heavily on *Perez v. Time Moving & Storage Inc.,* 08–CV–2775, 2008 WL 5662070 (S.D.N.Y. Jan. 15, 2008) (McMahon, J.). In *Perez,* plaintiffs were "helpers" and "supervisors" at a moving and storage company, which was alleged to have warehouses in both New York and New Jersey,

er, the facts presented would be insufficient to determine if the MCA exemption applies here.

7. Where possible, courts have chosen to avoid the question entirely. In *Bilyou,* for instance, the Second Circuit determined that the "collection and out-of-state export of empty containers" was covered by the MCA exemption, and therefore found it "unnecessary to determine whether [the] intrastate distribution of out-of-state products also meets the interstate commerce requirement." 300 F.3d at 224. Both parties rely extensively on *Bilyou* without acknowledging the primary distinction between the holding in *Bilyou* and the circumstances present here: while the shipments under consideration in *Bilyou* were the first leg on an out-of-state journey, those at issue here are the final, intrastate leg of an out-of-state journey. Consequently, even if the shipments at issue here are "part of a clearly integrated system of interstate shipments," MTD at 5 (citing *Bilyou,* 300 F.3d at 223), the interstate character of the shipments may change if their warehousing is more than a mere interruption in their journey. If that is the case, the MCA exemption would not apply to the intrastate travel leg of the shipments, even though they originated in another state or country.

who brought suit against their employer for unpaid overtime under the FLSA. *Id.* at \*1. The district court dismissed their complaint because it was "devoid of facts concerning what plaintiffs did when they came to work every day" and, in that instance, "the need for specific factual allegations about what the plaintiffs [did] every day [was] particularly important," as the MCA exemption might apply to their claims, depending on their duties. *Id.* Accordingly, the court found that the plaintiffs' claims were insufficient under *Twombly*, as "their claim for overtime [was] not plausible in the absence of allegations tending to show that the work plaintiffs performed for their motor carrier employer falls outside the rather broad" MCA exemption. *Id.* at \*2. The court then granted the plaintiffs leave to amend their complaint to add greater detail about their job duties, and indicated that if the renewed complaint pleaded facts that "render[ed] it plausible that plaintiffs [fell] outside the exemption, the complaint [could not] be dismissed on motion." *Id.*

While the *Perez* court was certainly within its discretion to find the plaintiffs' pleadings to be insufficient in that instance, *Perez* by no means established a precedent under which all FLSA claims must be dismissed where it is not immediately apparent whether an exemption might apply. Further, the Supreme Court has explicitly indicated that the employer bears the burden of demonstrating that an FLSA exemption applies. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *cf. also Chen*, 798 F.3d at 82 (dismissing FLSA overtime claim where face of complaint clearly demonstrated employer fell within exemption for seasonal amusement establishments). Thus, this Court cannot find that the SAC must be dismissed for failing to allege facts sufficient to support an affirmative defense.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED.

**SO ORDERED.**