In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1703

LEONID BURLAKA, *et al.*,

*Plaintiffs-Appellants,*

*v.*

CONTRACT TRANSPORT SERVICES LLC,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:17-cv-1126 — **William C. Griesbach**, *Judge*.

ARGUED SEPTEMBER 18, 2019 — DECIDED AUGUST 21, 2020

Before KANNE, HAMILTON, and BARRETT, *Circuit Judges*.

BARRETT, *Circuit Judge*. Leonid Burlaka, Timothy Keuken, Travis Frischmann, and Roger Robinson are truck drivers who brought individual, collective, and class action claims against Contract Transport Services (CTS), their former employer, for failing to provide overtime pay in violation of the Fair Labor Standards Act (FLSA), which requires overtime pay for any employee who works more than forty hours in a workweek. 29 U.S.C. § 207(a)(1). The entitlement to overtime

pay, however, is not absolute: as relevant here, the statute exempts employees who are subject to the Secretary of Transportation's jurisdiction under the Motor Carrier Act (MCA). 29 U.S.C. § 213(b)(1). This carveout is known as the "MCA exemption," and its rationale is safety. It is dangerous for drivers to spend too many hours behind the wheel, and "a requirement of pay that is higher for overtime service than for regular service tends to … encourage employees to seek" overtime work. *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 657 (1947).[1]

The viability of these claims therefore depends on whether the plaintiffs are subject to the jurisdiction of the Secretary of Transportation, which extends "over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both[] are transported by motor carrier … between a place in … a State and a place in another State." 49 U.S.C. § 13501(1)(A). Importantly, drivers need not actually drive in interstate commerce to fall within the Secretary's jurisdiction. As the Department of Transportation has explained through a notice of interpretation, the MCA exemption applies even to drivers who have not driven in interstate commerce so long as they are employed by a carrier that "has engaged in interstate commerce and that the driver could reasonably have been expected to make one of the carrier's interstate runs." Application of the Federal Motor Carrier Safety Regulations, 46 Fed. Reg. 37,902, 37,903 (July 23, 1981).

---

[1] The plaintiffs also asserted claims under Wisconsin law, which tracks both the federal overtime pay requirement and the MCA exemption. *See* WIS. ADMIN. CODE DWD § 274.04(4). We will focus on the federal law claims because the same analysis applies to both.

The scope of an interstate commerce run under the MCA is generous. It includes a purely intrastate run so long as it is a part of a continuous interstate journey. *See Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 898 (7th Cir. 2009). This continuity is not broken by routine interruptions that "are no more than the normal stops or stages that are common in interstate sales." *Id.* As the Court explained in *Walling v. Jacksonville Paper Co.*, "if the halt in the movement of the goods is a convenient intermediate step in the process of getting them to their final destinations, they remain 'in commerce' until they reach those points." 317 U.S. 564, 568 (1943).

With the statutory scheme in mind, we turn to the facts. CTS is a Wisconsin-based motor carrier company that provides truckload transportation services for client companies primarily in Wisconsin, Minnesota, Iowa, Illinois, and Michigan. It employs drivers that provide both over-the-road services—transportation of clients' goods over long distances (up to 500 miles) within and across state lines—as well as yard management and spotting services—transportation of loaded and empty trailers over short distances among and within clients' facilities.

CTS contends that the scope of the plaintiffs' employment included over-the-road driving—which matters because merely being subject to over-the-road assignments would be enough to render the plaintiffs subject to the MCA exemption. According to CTS, all of its drivers are hired for the same position, and although some are assigned to spotting duties, all drivers can be called on to perform any driving assignment. That is why, CTS explains, it requires all drivers to hold commercial driver's licenses and to comply with the same Federal Motor Carrier Safety Regulation requirements. The plaintiffs,

on the other hand, insist that they asked to be assigned only to spotting duties and that CTS, respecting that request, did not reprimand them for turning down over-the-road assignments. Thus, they say, longer hauls were not actually within the scope of their employment.

If CTS is right, the case ends there. But the factual dispute about whether the plaintiffs were reasonably expected to drive across state lines makes that question one for a jury. So we will focus instead on the connection between the plaintiffs' spotting duties and the interstate shipment of the goods they carried. If the undisputed facts establish that the plaintiffs could be reasonably expected to drive intrastate routes that were part of a continuous interstate journey, then the MCA exemption applies.

During the relevant period, all of the plaintiffs performed spotting duties for Green Bay Packaging, one of CTS's clients. The plaintiffs were assigned to two of Green Bay Packaging's Wisconsin-based corrugated box manufacturing facilities: Green Bay Shipping Container and De Pere Shipping Container. As spotters, the plaintiffs drove loaded and empty trailers either within these facilities (to loading docks) or to nearby locations, where they drove short routes on public roads. The public route at the De Pere location connected the De Pere Container to the De Pere Folding Carton, and the public routes at the Green Bay location connected the Green Bay Container to three warehouses (Warehouse 3, Warehouse 6, and Quincy Warehouse) and a drop lot across the street from the Green Bay Container. The plaintiffs were assigned to these routes indiscriminately—in other words, they could be expected to drive any of the routes.

After the spotters dropped off their trailers at these drop-off locations, the trailers were picked up by different drivers for delivery either within or outside Wisconsin. To show that the trailers driven by the plaintiffs were among those used to make out-of-state deliveries, CTS introduced Green Bay Packaging's bills of lading. These bills—which track the trailers' identification numbers, pick-up locations at Green Bay Packaging facilities, out-of-state delivery locations, and delivery dates—show that some of the trailers dropped off by the plaintiffs were used shortly thereafter (usually within a few days) to deliver goods across state lines. The record reflects that approximately 20% of the goods that passed through Green Bay were either coming from or destined for a different state. At De Pere, the same was true for between 24% and 54% of the goods. And the handwritten notes on the bills of lading show that at least some of these interstate goods passed through the relevant warehouses.

These facts plainly demonstrate that at least some spotters drove trailers carrying finalized goods destined for out-of-state delivery. Such a service, even if purely intrastate and interrupted briefly, would nevertheless constitute "driving in interstate commerce" because it would be part of the goods' continuous interstate journey. *See Collins*, 589 at 898; *see also Walling*, 317 U.S. at 568 (defining shipment in interstate commerce as the "practical continuity of movement of the goods"). And while some of the plaintiffs' runs may have been purely local, the sheer volume of the interstate commerce through these facilities, combined with the fact that the plaintiffs were assigned to their spotting duties indiscriminately, demonstrates that the plaintiffs had a reasonable chance of being called upon to make some drives that were part of a continuous interstate journey. *See Morris v. McComb*,

332 U.S. 422, 423 (1947) (holding that the exemption applies to drivers of a carrier that only devoted approximately 4% of its total services to interstate commerce and distributed its interstate assignments indiscriminately).

The plaintiffs make several weak attempts to undermine this conclusion. First, they argue that as spotters, they were not likely to be given over-the-road assignments. Thus, they claim, there was only a "remote" chance that they'd be sent on interstate runs. *See Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 663 (7th Cir. 2011). This argument is wholly unpersuasive. As we have already explained, the plaintiffs can fall within the MCA exemption even if they were not expected to take over-the-road assignments. The question is whether the plaintiffs' spotting duties were part of the interstate journey of the goods. If they were, the MCA exemption applies. When both over-the-road drivers and spotters take part in the interstate journey of the goods, both services affect "safety of operation of an interstate motor carrier." *Levinson*, 330 U.S. at 668.

The plaintiffs also argue that any link between their spotting services and the interstate shipment is too attenuated to form a continuous interstate journey. They emphasize that the interstate shipment process entailed several steps between the initial spotting and the eventual delivery of the goods across state lines. These steps included rotation among the drivers, stops at different locations such as warehouses, and potential unloading and reloading. But the existence of intermediary steps does not sever the connection between the plaintiffs' driving and the ultimate interstate movement of the goods. None amounted to anything other than "interruptions in the journey that … are no more than the normal stops or stages

that are common in interstate sales." *Collins*, 589 F.3d at 898.[2] The plaintiffs seem to imagine that a continuous journey must resemble a relay race, in which the next driver immediately picks up exactly where the other left off. But that is neither how interstate shipments work nor what the MCA requires.

Because the evidence establishes that plaintiffs were subject to performing spotting duties that comprised one leg of a continuous interstate journey, the district court's grant of summary judgment is AFFIRMED.

---

[2] Plaintiffs also try to sever this link by noting that sometimes the trailers driven by Robinson contained cardboard that needed to be processed into finished boxes prior to being shipped to customers. They argue that this process of transforming the cardboard into the finalized products interrupted the continuous interstate journey. *See Goldberg v. Faber Indus., Inc.*, 291 F.2d 232, 234 (7th Cir. 1961). As CTS correctly points out, the plaintiffs did not raise this argument before the district court. Thus, this argument is forfeited.